941 F.2d 1210
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeff CODY, Defendant-Appellant.
 No. 91-3018.
 United States Court of Appeals, Sixth Circuit.
 Aug. 15, 1991.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Jeff Cody, appeals after being convicted of causing the mailing of an extortionate demand. 18 U.S.C. § 876. On appeal, Cody raises three issues: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in instructing on aiding and abetting; and (3) the court erred in limiting the cross-examination of a government witness.
 
 
 2
 After carefully reviewing these claims of error, we are unpersuaded that any of them have sufficient merit to warrant a reversal. Accordingly, we affirm.
 
 I.
 
 3
 On February 1, 1990, while sorting through the mail received at her home that day, Rebecca Haslinger opened a letter addressed to her husband. The letter had no return address and was not signed, but had a cancelled twenty-five cent stamp affixed. The letter read in its entirety:
 
 
 4
 Dan Haslinger,
 
 
 5
 I have tried to reach you several occasions on the phone without success. You had business dealings with (Dave M.) an Associate of mine. You received our product but we never received payment for our product. My company deals on trust and you have not lived up to the conditions of our contract. It appears that you have no intention of paying. We do not take kindly to people who receive our product and do not pay.
 
 
 6
 You owe $10,000 to my Associate. You now owe $20,000 which covers expenses and interest I have lost because of you not paying and now it's time to collect.
 
 
 7
 Upon receiving this letter, I would suggest that you get my money ready. I also suggest that you keep this matter between us. I would not take kindly to someone who tries not to pay or does something stupid like going to the police. We both know what this matter concerns and the consequences of your actions could be Fatal. This is the only warning you will receive. You had sufficient time to make matters right and now you are out of time. I will call you on Friday, February 2, 1990 at 8:00 p.m. in your office. I will expect you to be there so that we can clear up this little matter before it goes any further and I have to take other actions which could be seriously fatal to your Health. I hope we understand each other and have no problems with this matter.
 
 
 8
 (App. 11-12).
 
 
 9
 The Haslingers took the letter to the Federal Bureau of Investigation and arrangements were made to record the February 2, 1990, telephone call referred to in the letter. The anticipated telephone call was received. Daniel Haslinger did not recognize the voice of the caller who identified himself only as "Tony." Haslinger asked the caller if he had sent the letter and the answer was "yes." Telephone records later showed that this call originated from defendant's home as did three previous calls referenced in the letter.
 
 
 10
 Haslinger arranged with the caller to telephone again on February 7, 1990. During the course of that conversation, Haslinger agreed to pay $10,000. A third telephone call set up the Ramada Inn in Toledo, Ohio, as the meeting place for the money exchange.
 
 
 11
 Haslinger, wearing a body recorder, met with "Tony" at the agreed time and place and gave him an envelope containing $10,000 in marked bills. Haslinger was able to identify the voice as that of the caller. "Tony," who turned out to be defendant Cody, started to leave and was arrested by FBI agents. After being arrested and advised of his rights, Cody made certain incriminating admissions but did not admit to sending the threatening letter.
 
 II.
 The Sufficiency of the Evidence
 
 12
 In reviewing sufficiency of the evidence claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 13
 Defendant, citing primarily older cases, argues vigorously that the evidence, in order to be sufficient, must remove every hypothesis but guilt. That is not the rule in this circuit. We adhere to the rule that circumstantial evidence alone is sufficient to sustain a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 14
 The evidence was overwhelming that defendant made the telephone calls and was the person who arrived to pick up the money. In one of the telephone calls, he admitted being the person who sent the letter. The sum total of the evidence is sufficient to support the conviction.
 
 III.
 The Aiding and Abetting Theory
 
 15
 Defendant argues that it was not until the morning of trial that the government formally made known that an aiding and abetting theory was part of their trial strategy. Cody does not argue surprise or prejudice but, rather, that an aiding and abetting theory was not supported by the evidence, since the evidence showed no involvement by anyone other than the defendant. Thus, argues Cody, who could I have aided or abetted?
 
 
 16
 Although the court at the request of the government gave an aiding and abetting instruction, it also instructed on the substantive offense defined by 18 U.S.C. § 876. The indictment did not charge a violation of 18 U.S.C. § 2, the aiding and abetting statute, nor did the jury verdict form or the court's judgment reflect other than a conviction for violating 18 U.S.C. § 876. The government, realizing the circumstantial nature of the evidence as to mailing, and apparently in an excess of caution, elected to buttress its chances of success by specifically including an aiding and abetting theory as part of the case that went to the jury.
 
 
 17
 The defendant makes no convincing argument that what he did would not constitute aiding and abetting. Rather, he contends that the government never really believed another person was involved and that the proofs do not support a finding that another person was involved. Defendant then argues from this that one cannot aid and abet himself. This argument misses the mark. The government has no burden under an aiding and abetting theory to identify the principal. All it need do is establish that the substantive crime charged was committed by someone. United States v. Mann, 811 F.2d 495 (9th Cir.1987). The government clearly met this burden. There was ample circumstantial evidence from which a reasonable juror could conclude that Cody mailed the letter containing the extortionate demand. Similarly, Cody's acts in making telephone calls to Haslinger prior to the mailing of the letter, as well as all of his conduct subsequent to the receipt of the letter, qualify as the acts of an aider and abettor, if indeed another person was involved. Cody is wrong when he contends that any actions taken after the letter was received could not constitute aiding and abetting. Although the receipt of the letter in and of itself would have been sufficient to make the sender guilty under the applicable statute, Cody's actions after the letter was received in furtherance of the extortionate scheme were the acts of an aider and abettor.
 
 IV.
 The Cross-Examination Issue
 
 18
 Clinton Baber, an FBI agent, testified for the government at trial. Baber interviewed the defendant shortly after his arrest, and Cody admitted he had been to the Ramada Inn twice on the day of his arrest. The first trip was to ascertain if any law enforcement personnel appeared to be in the area.
 
 
 19
 On cross-examination, defense counsel asked Baber: "Now, isn't it also true that during the course of your interview, Mr. Cody steadfastly denied mailing the letter that is involved in this case?" (App. 26). The government objected to the question as calling for hearsay, and the trial judge took a brief recess to hear the parties' arguments on this issue.
 
 
 20
 The government argued that the statement was an out-of-court declaration offered to prove the truth of the matter asserted and therefore was impermissible hearsay. Defense counsel suggested that the question was asked just to show the statement was made, and he appeared to argue, but did not reference, Federal Rule of Evidence 106, which provides:
 
 
 21
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
 
 
 22
 The judge took yet a different tack and appeared to rule that the question was outside the scope of the direct examination, although there was no specific reference to Fed.R.Evid. 611(b).[1] In any event, we review evidentiary rulings under an abuse of discretion standard. United States v. Mahar, 801 F.2d 1477, 1495 (6th Cir.1986). We are unable to conclude that the judge abused his discretion. The defendant was free to call Agent Baber when presenting his own case and could have conducted a direct examination.[2] More importantly, however, we can see no harm to the defendant. The jury heard the question, which was leading in nature, and it clearly suggested what the answer would be. Also, the jury was well aware that Cody never admitted writing the letter, or there would have been no trial.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Fed.R.Evid 611(b) reads as follows: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."
 
 
 [2]
 This would have solved the "scope of the examination" problem but would still leave the hearsay objection